Linda M. Dardarian (SBN 131001)
ldardarian@gdblegal.com
Andrew P. Lee (SBN 245903)
alee@gdblegal.com
Katharine Fisher (SBN 305413)
kfisher@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTIE LASHBROOK, EASTER SOLI, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>EXTENDED STAY AMERICA, INC., ESH HOSPITALITY, INC., ESA MANAGEMENT, LLC,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT**<br><br>1.  Violation of Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101, *et seq.*)<br><br>2.  Violation of California's Unruh Civil Rights Act (California Civil Code §§ 51, *et seq.*)<br><br>3.  Violation of California's Disabled Persons Act (California Civil Code §§ 54, *et seq.*)<br><br>4.  Violation of California's Unfair Competition Law (California Business & Professions Code §§ 17200, *et seq.*)<br><br>5.  Demand for Jury Trial |

Plaintiffs Artie Lashbrook and Easter Soli, on behalf of themselves and all other persons similarly situated, complain of Defendant Extended Stay America, Inc. and its subsidiaries ESH Hospitality, Inc. and ESA Management LLC (collectively, "Defendants" or "Extended Stay America") herein and alleges as follows:

## INTRODUCTION

1.     Plaintiffs bring this civil rights lawsuit to redress Extended Stay America's systemic failure and refusal to provide hotel rooms that are accessible to and usable by individuals with mobility disabilities.  Extended Stay America designates rooms in its hotels as being accessible to individuals with mobility disabilities (hereinafter "designated-accessible rooms"), however, these rooms contain multiple barriers to access, including but not limited to beds that are too high for persons with mobility disabilities to transfer onto and showers that lack transfer benches, seats, or shower chairs that allow individuals with mobility disabilities full and equal access to the shower facilities.  Moreover, Extended Stay America does not identify or describe the accessible features of its designated-accessible hotel rooms, denying persons with mobility disabilities important information as to whether Extended Stay America's hotel rooms will meet their accessibility needs.  Due to the lack of accessible hotel rooms and Extended Stay America's failure to describe accessible features through its reservation service, individuals with mobility disabilities are denied the full and equal enjoyment of Defendants' hotel services, facilities, privileges, advantages, and accommodations in the state of California and throughout the country.  As a place of public accommodation, Extended Stay America's failure to construct or alter the designated-accessible hotel rooms in a manner that makes them accessible to and independently usable by individuals with disabilities, to remove barriers to access where readily achievable, to reasonably modify its policies to afford people with mobility disabilities access to its accommodations, and to inform guests looking to reserve designated-accessible rooms of these shortcomings constitutes discrimination in violation of federal and state disability nondiscrimination laws.

2.     The Americans with Disabilities Act was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities in such critical areas as employment, housing, public accommodations, education,

1

COMPLAINT

transportation, communication, recreation … and access to public services," and to assure equality of opportunity and "full participation" in mainstream society.  *See* 42 U.S.C. § 12101(a)(3)-(9).  To accomplish this goal of full integration, federal and state disability access laws obligate places of public accommodation to provide persons with disabilities full, free, and equal access to and enjoyment of their "goods, services, facilities, privileges, advantages, or accommodations."  *See* 42 U.S.C. § 12182(a) (Americans with Disabilities Act); Cal. Civ. Code §§ 54, 54.1(d) (California Disabled Persons Act); Cal. Civ. Code § 51(b) & 51(f) (California Unruh Civil Rights Act).

3.      Among the "services, facilities, privileges, advantages, or accommodations" of hotels and other places of lodging that must be made fully and equally accessible to persons with mobility disabilities are hotel beds.  Indeed, the United States Department of Justice has expressly stated that the barrier removal and policy modification obligations set forth in the ADA's implementing regulations require accessible beds.  28 C.F.R. § Pt. 36, App. A ("In many cases … adjusting hotel bed heights may be necessary to comply with those requirements."); 28 C.F.R. §§ 36.302 & 36.304.  This means that persons with mobility disabilities must be able to transfer safely and independently on to and off of beds in designated-accessible hotel rooms.  Research conducted on behalf of the United States Access Board establishes that there is "consensus among studies that transferring [from a wheelchair or similar mobility assistive device] to a higher surface implies greater exertion of the upper limb," and that fewer than 24 percent of the individuals with varying mobility disabilities who participated in this study could transfer from a wheelchair to a surface height of 28 inches or more given a 3.5 inch gap between wheelchair and surface.  *See* Alicia Koontz, PhD, RET *et al*., The Impact of Transfer Setup on the Performance of Independent Transfers: Final Report *available at* http://herl.pitt.edu/ab/.  Moreover, the International Code Council, which develops model construction codes and standards adopted by public and private entities, recently issued a standard for "Accessible and Useable Buildings and Facilities" requiring that that "[a]t least one bed shall measure 17 to 23 inches (430 to 585 mm) high from the floor to the top of the uncompressed mattress."  Accessible and Useable Buildings and Facilities, Section 1102.15.3 (ICC 2017).

4.      With respect to shower stalls, both the 1991 and 2010 ADA Standards for Accessible Design, which were adopted by the United States Department of Justice and apply to public

accommodations constructed after January 26, 1993 and March 14, 2012 respectively, mandate that benches or seats be provided for accessibility.  The 1991 Standards require that "[a] seat shall be provided in shower stalls 36 in by 36 in (915 mm by 915 mm) and … [t]he seat shall be mounted 17 in. to 19 in. (430 mm to 485 mm) from the bathroom floor and shall extend the full depth of the stall." 1991 Standards § 4.21.3.  The 2010 Standards state:  "A folding or non-folding seat shall be provided in transfer type shower compartments."  2010 Standards § 608.4.  "In transfer-type showers, the seat shall extend from the back wall to a point within 3 inches (75 mm) of the compartment entry.  The top of the seat shall be 17 inches (430 mm) minimum and 19 inches (485 mm) maximum above the bathroom finish floor."  *Id.* § 610.3.

5.      With respect to hotel reservation systems, the 2010 ADA Standards require that public accommodations that own or operate a place of lodging "[i]dentify and describe accessible features in hotels and guest rooms offered through its reservation service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs."  28 C.F.R. § 36.302(e)(1)(ii).  This obligation applies to "reservations made by any means, including by telephone, in-person, or through third-party."  *Id.*

6.      Defendant Extended Stay America, Inc., through itself and its wholly-owned and/or controlled subsidiaries, including Defendants ESH Hospitality, Inc. and ESA Management, L.L.C., owns and operates a chain of extended-stay hotels under the Extended Stay America brand throughout the United States.  Plaintiffs are informed and believe that Defendants own and operate 626 extended-stay hotels in forty-four states, including more than eighty hotels in California.  On information and belief, Defendants have a centralized policy and practice of (1) furnishing their designated-accessible rooms with beds that patrons with mobility disabilities are unable to safely transfer onto and off of due to excessive height; (2) failing to provide seats in transfer-type showers in designated-accessible rooms so that patrons with mobility disabilities may safely use the showers; (3) providing reservation services that fail to identify and describe accessible features in the designated- accessible rooms to allow patrons with mobility disabilities to assess whether a given room meets his or her accessibility needs; and (4) failing to ensure that designated- accessible rooms are fully accessible to and independently usable by individuals with mobility disabilities.

682921.19

7.      The aforementioned policies and practices, or lack thereof, have resulted in discrimination against persons with mobility disabilities.  Named Plaintiff Artie Lashbrook is an individual with a mobility disability who has been personally discriminated against and subjected to risk of personal injury due to the inaccessible beds and shower facilities at issue in this case.  Plaintiff Lashbrook's wife, Plaintiff Easter Soli, has also suffered frustration, embarrassment, emotional distress, and discrimination, which amounts to a specific, direct, and separate injury, as a result of being forced to address the circumstances caused by the barriers to access encountered by Plaintiff Lashbrook.  During their multiple visits to Extended Stay America hotels, Plaintiffs have been assigned to designated-accessible rooms that were inaccessible to Plaintiff Lashbrook on account of beds that were too high and showers that lacked transfer seats.  Despite their efforts, Plaintiffs were unable to know in advance whether the rooms would meet Plaintiff Lashbrook's accessibility needs as the Extended Stay America online booking system failed to specify the rooms' accessibility features, and the telephone booking agents merely provided Plaintiffs with general assurances that the rooms were accessible, which later proved to be inaccurate and unfounded.  In addition, the on-site personnel failed to accommodate Plaintiff Lashbrook.

8.      Plaintiff Lashbrook brings this action on behalf of himself and all similarly situated persons with mobility disabilities who have used or attempted to use Defendants' hotel room facilities and reservation services, and have been denied full and equal access to such facilities and/or services.  Similarly, Plaintiff Soli brings this action on behalf of all similarly situated companions of persons with mobility disabilities who have used or attempted to use Defendants' hotel room facilities and have been denied full and equal access to such facilities.  Plaintiffs bring this action to challenge Defendants' discriminatory policies and practices, remediate disability access barriers present in Defendants' designated-accessible hotel rooms that discriminate against individuals with mobility disabilities, and bring about full and equal access to Extended Stay America's designated-accessible hotel rooms throughout the United States.

## JURISDICTION AND VENUE

9.      This action to redress systemic civil rights violations against individuals with mobility disabilities by Defendants is brought pursuant to Title III of the Americans with Disabilities Act, §§

682921.19

12101, *et seq.* ("the ADA"), California Civil Code § 51, *et seq.* ("the Unruh Act"), California Civil Code §§ 54, *et seq.* ("the Disabled Persons Act"), and California Business & Professions Code §§ 17200 *et seq.* ("the Unfair Competition Law" or "UCL").  Plaintiffs seek declaratory and injunctive relief under the ADA; declaratory, injunctive, and monetary relief for claims brought pursuant to the Unruh Act and the UCL; and monetary relief and declaratory relief, but not injunctive relief, for claims brought pursuant to the Disabled Persons Act.

10.    This Court has federal question jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA.  The Court has supplemental jurisdiction of Plaintiffs' Unruh Act, Disabled Persons Act, and UCL claims pursuant to 28 U.S.C. § 1367.  This Court has jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

11.    Venue is proper in, and Extended Stay America is subject to the personal jurisdiction of, this Court under 28 U.S.C. § 1391(a) because Extended Stay America owns and operates places of lodging throughout the State of California and this District, and Plaintiff Lashbrook has encountered inaccessible beds and showers in the designated-accessible hotel rooms at Defendants' hotels in this District.  Accordingly, a substantial part of the discriminatory conduct giving rise to Plaintiffs' claims occurred in this District.  Venue is proper in the San Jose Division of this Court pursuant to Local Rule 3-2(c), (e) because, as alleged herein, some of the events which give rise to the claims asserted in this Complaint occurred in Santa Clara County, California, which is located in this Division.

## THE PARTIES

12.    Plaintiff Artie Lashbrook is a resident of the City of San Jose in Santa Clara County.  Mr. Lashbrook is a double-amputee who uses a wheelchair for mobility.  Mr. Lashbrook is a qualified person with a disability within the meaning of the Americans with Disabilities Act, the Disabled Persons Act, and the Unruh Civil Rights Act.  Plaintiff Lashbrook has been denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, and accommodations, due to inaccessible shower facilities and inaccessible beds in Defendants' hotel rooms that are designated as accessible to individuals with disabilities ("designated-accessible rooms").  Plaintiff would be willing to return to Defendants' hotel properties once Defendants make the necessary modifications so that the

682921.19

1  designated-accessible rooms are independently accessible to and usable by persons with mobility

2  disabilities.  Plaintiff Easter Soli, who is Plaintiff Lashbrook's wife and does not have a disability,

3  accompanied Plaintiff Lashbrook during his three separate stays at Defendants' hotels, and would

4  accompany him in future stays at Defendants' hotels once they are modified to be fully accessible to

5  and usable by persons with mobility disabilities.

6        13.    Defendant Extended Stay America, Inc. ("ESA") is a public corporation, incorporated

7  under the laws of Delaware, with its principle executive offices located at 11525 N. Community House

8  Road, Suite 100, Charlotte, North Carolina.  Plaintiffs are informed and believe that ESA, through

9  itself and its subsidiaries, owns and operates 626 extended-stay hotels in forty-four U.S. states.  On

10  information and belief, ESA operates the extended-stay hotels, including the hotels in this District at

11  which Plaintiffs Lashbrook and Soli encountered inaccessible beds and shower facilities, through

12  wholly-owned operating subsidiaries.  ESA also has a controlling financial interest in its subsidiary,

13  ESH Hospitality, Inc. ("ESH"), which owns the hotel properties operated by ESA and its subsidiaries.

14  Thus, through itself and its subsidiaries, Defendant ESA owns, operates, and controls the properties at

15  which Plaintiff Lashbrook, Plaintiff Soli, and the proposed classes were denied full and equal access

16  on account of designated accessible hotel rooms, hotel beds, and shower facilities that are inaccessible

17  to individuals with mobility disabilities, and owns or operates the hotel room reservation service that

18  fails to identify and describe accessible features in the designated-accessible rooms to allow patrons

19  with mobility disabilities to assess whether a given room meets his or her accessibility needs.  This

20  Court has personal jurisdiction over ESA in this action.

21        14.    Defendant ESH Hospitality, Inc. ("ESH") is a real estate investment trust incorporated

22  in the state of Delaware, with its principle executive offices located at 11525 N. Community House

23  Road, Suite 100, Charlotte, North Carolina.  ESH is a majority-owned, controlled subsidiary of ESA

24  that owns all of the hotel properties operated by ESA in the United States, including the properties in

25  this District at which Plaintiffs Lashbrook and Soli encountered inaccessible hotel beds and shower

26  facilities.  Through itself and its subsidiaries, Defendant ESH owns the properties where Plaintiff

27  Lashbrook, Plaintiff Soli, and the proposed classes were denied full and equal access on account of

28  designated-accessible hotel rooms, hotel beds, and shower facilities that are inaccessible to individuals

682921.19

1   with mobility disabilities, and a hotel room reservation service that fails to provide adequate

2   accommodation for guests with mobility disabilities.  Therefore, this Court has personal jurisdiction

3   over ESH in this action.

4        15.    Defendant ESA Management, L.L.C., is a Delaware entity and wholly-owned ESA

5   subsidiary that is registered to do business in California.  Plaintiffs are informed and believe that ESA

6   Management controls the day-to-day operations of ESA's hotel properties, including the properties in

7   this District where Plaintiffs Lashbrook and Soli encountered inaccessible hotel beds and shower

8   facilities, which it manages pursuant to property management agreements with ESA's wholly-owned

9   operating subsidiaries.  Therefore, this Court has personal jurisdiction over ESA Management in this

10  action.

11       16.    Defendants ESA, ESH, and ESA Management (collectively "Defendants" or "Extended

12  Stay America") are, and at all times were, owners and/or operators of the Extended Stay America

13  hotels in San Jose, California and throughout the United States, which are places of public

14  accommodation within the meaning of Section 302(a) of the ADA, 42 U.S.C. § 12812(a), business

15  establishments within the meaning of the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq*., and

16  places of public accommodation within the meaning of the Disabled Persons Act, Cal. Civ. Code § 54,

17  *et seq*.

18                          **FACTUAL BACKGROUND**

19       17.    Extended Stay America claims to be "the largest integrated owner/operator of company-

20  branded hotels in North America" and boasts "the largest number of extended stay hotels in the United

21  States."  *See* Extended Stay America Form 10-K attached hereto as Exhibit 1; webpage "about

22  Extended Stay America" attached hereto as Exhibit 2.  On information and belief, Extended Stay

23  America owns and operates 626 hotels in forty-four U.S. states.  *See* Exhibit 1 [Form 10-K].  Because

24  Extended Stay America and its subsidiaries, "fully own and operate all Extended Stay America hotels,

25  [Defendants] can hold each to a consistent high standard in guest service."  *See* Exhibit 2 ["about

26  Extended Stay America"].  However, Defendants consistently fail to meet this high standard for guests

27  with mobility disabilities because: (1) the hotel beds in Defendants' designated-accessible hotel rooms

28  are too high for guests to independently and safely transfer onto and off of from their wheelchairs or

other mobility devices; (2) Defendants fail to provide seats or benches in the transfer-type showers in their designated-accessible hotel rooms to make the showers usable by individuals with mobility disabilities; (3) Defendants' reservation service fails to identify and describe accessible features in designated-accessible hotel rooms in enough detail to permit individuals with disabilities to assess whether the rooms meet their needs; and (4) Defendants fail to ensure that designated-accessible rooms are fully accessible to and independently usable by individuals with mobility disabilities.

18.     Defendants' failure and refusal to provide designated-accessible rooms, including beds and shower facilities, that are accessible to individuals with mobility disabilities constitutes discrimination on the basis of disability and operates to exclude individuals with disabilities from the full and equal use and enjoyment of Defendants' services, facilities, privileges, advantages, and accommodations. Plaintiff Lashbrook is one such individual. Plaintiff Lashbrook uses a wheelchair for mobility after having had first one and then both legs amputated. His wheelchair is approximately 20 inches from floor to seat. Plaintiff Lashbrook has been denied full and equal access to Extended Stay America's hotel services, facilities, privileges, advantages, and accommodations on three separate occasions in the last two years.

19.     Plaintiff Lashbrook's first encounter with Extended Stay America occurred on or around January 4, 2016, when he and Plaintiff Soli, his then-fiancée, stayed for one night at the Extended Stay America located at 6189 San Ignacio Avenue, San Jose, California, the "San Jose – Edenville – South" location. Plaintiff Lashbrook was attracted to Extended Stay America as its rooms contained kitchenettes and were comparatively low-priced. He reserved a hotel room through Extended Stay America's online booking process and requested an accessible room through the online portal, leaving a comment that he was an above-the-knee single amputee using a wheelchair at the time. The reservation page did not provide specific details regarding the designated-accessible room's accessibility features.

20.     When Plaintiffs Lashbrook and Soli arrived at the hotel and went up to the provided room, they noticed that the bed appeared to be too high for Plaintiff Lashbrook to safely transfer onto and out of using his wheelchair. Plaintiff Lashbrook estimates that the hotel bed was approximately 30 inches from the floor to the top of the bed, or 10 full inches above the seat of his wheelchair. Upon

seeing the inaccessible hotel bed, Plaintiff Lashbrook talked to the hotel's Night Manager to alert the hotel staff to the safety issue posed by the bed.  The Night Manager informed Plaintiff Lashbrook that the room provided was the "only accessible room" and did not offer any alternative accommodations.  That night, Plaintiff Lashbrook was able to use the roll-in shower facilities in the room, but then, faced with no alternative short of sleeping in his chair, Plaintiff Lashbrook was forced to attempt to transfer himself onto the hotel bed despite the risk of personal injury.  After experiencing some difficulty and requiring Plaintiff Soli's assistance, he was able to transfer onto the bed, where he had to remain until Plaintiff Soli could again assist him back into his chair the next morning.  Plaintiff Lashbrook spoke to the hotel staff again the next morning to reiterate his concerns about the inaccessible hotel bed and the potential safety risk for guests with mobility disabilities.  The hotel staff again told Plaintiff Lashbrook that the provided room was "accessible," citing the fact that it was a "brand new room" that had been finished recently.

21.     Plaintiff Lashbrook next stayed at the Extended Stay America "San Jose – Airport" hotel, located at 55 E. Brokaw Road, San Jose, California, on January 20, 2017.  He and Plaintiff Soli had originally intended to marry on that date (later postponing the ceremony for one week), and booked a room at the hotel to celebrate.  Plaintiff Lashbrook lived at a residential skilled-nursing facility at the time, so the hotel stay was a special way for Plaintiffs Lashbrook and Soli to have a private home for the night, complete with a kitchenette where they could make dinner together.  In preparation for that stay, Plaintiff Lashbrook called Extended Stay America's customer service line to reserve the booking and to request an accessible room.  Since Plaintiffs' first visit to Extended Stay America, Plaintiff Lashbrook's right leg had been amputated below the knee, and he had even less mobility than before.  Plaintiff Lashbrook therefore made sure to list in detail the accessibility features he would need.  Plaintiff Lashbrook specifically requested that he be provided a hotel room with a roll-in shower and that the bed be of an accessible height – meaning he could safely transfer between his wheelchair and the bed.  Upon repeatedly underscoring the nature of his disability and limited mobility, he was assured that the room he would be provided was "definitely accessible," that it was "wheelchair accessible," and that it was accessible to people with disabilities of the nature he described.

22.    However, upon arrival, Plaintiffs again encountered a room with multiple accessibility barriers.  After checking in and waiting for their designated accessible hotel room to be ready, Plaintiff Soli went up to use the restroom in the hotel room while he waited in the lobby.  When she returned, she informed Plaintiff Lashbrook that the room did not have the roll-in shower that he had requested. Plaintiff Lashbrook asked the staff at the front desk if there was another room with a roll-in or otherwise accessible shower, but they said there were no other options available and mentioned he could request a refund.  Not wanting to have to cancel his stay, Plaintiff Lashbrook went to see the shower for himself.  The shower was not a roll-in type shower, but was a transfer-type shower that Plaintiff Lashbrook could use with a transfer bench or seat; however, there was no such seat in the shower facility.  He returned downstairs to speak to the hotel staff and to request a shower bench or transfer chair, but they merely said, "We don't have those here."  Plaintiff Lashbrook was forced to accept that he would not be able to shower that night, knowing that the alternative would mean cancelling his visit with his fiancée.

23.    Having been so focused on resolving the inaccessibility of the shower, Plaintiff Lashbrook did not notice that the hotel bed was also inaccessible until he tried to turn in for the night. Like the bed he encountered at the San Jose – Edenville – South location, the hotel bed was considerably higher than his wheelchair's seat, and Plaintiff Lashbrook did not feel it was safe for him to attempt to transfer from his wheelchair to the hotel bed.  He called the hotel's front desk about the inaccessible hotel bed, but the desk clerk told Plaintiff Lashbrook that there was nothing that could be done and that all of the rooms at that Extended Stay America hotel and other nearby Extended Stay America hotels were fully booked.  Having received no alternative accommodations from the hotel, Plaintiff Lashbrook tried to transfer to the bed himself, but even with Plaintiff Soli's help, he was unable to transfer to the bed.  He slept in his wheelchair that night.  The next morning, after Plaintiff Lashbrook asked to speak with the manager regarding the inaccessibility and safety issues, the hotel manager apologized, refunded the booking, and promised to reach out to Plaintiff Lashbrook after researching the situation, but never contacted Plaintiff Lashbrook again.  This was the only occasion on which Plaintiff Lashbrook was issued a refund by an Extended Stay America employee.

24.    One week later, on January 27, 2017, Plaintiff Lashbrook and Plaintiff Soli were married and stayed at the Extended Stay America hotel at 6199 San Ignacio Avenue, San Jose, California (the "San Jose – Edenville – North" location) to celebrate.  When booking the hotel room over the telephone, Plaintiff Lashbrook had again specifically requested that the bed be of an accessible height and that he be provided a room with a roll-in shower or another means by which he could transfer into the shower if a roll-in shower was not available.  The customer service agent again assured Plaintiff Lashbrook that the room and bed would be accessible to him and that his disability would be accommodated.

25.    Again, upon arrival, Plaintiffs encountered an inaccessible hotel room – with no accessible shower facilities or accessible bed.  Plaintiff Lashbrook first noticed that there was no roll-in shower, but instead a transfer-type shower with no seat.  He contacted the hotel staff to ask whether they had any rooms with roll-in showers, but they said they had no such rooms available.  He asked whether he and Plaintiff Soli could be transferred to the accessible room at the nearby Edenville – South Extended Stay America because he understood from his prior visit that it at least had a roll-in shower, but was told that all of the rooms at both Edenville locations were fully booked.  Finally, he requested that the hotel staff provide a transfer seat or bench, so that he could use the shower in the room, but was again told that they had none available.  He also notified the hotel staff that the bed was too high for him to safely transfer from his chair onto the bed or vice versa, but was informed that that room was the only room available.  The hotel staff offered no alternative accommodations.

26.    That night, Plaintiff Lashbrook experienced gastrointestinal issues and had an accident in his chair.  He could not use the shower in the room, so Plaintiff Soli was forced to give him a sponge bath in his chair, which caused a significant amount of frustration, embarrassment, disappointment, and mental and physical exhaustion for both Plaintiffs Lashbrook and Soli.  Plaintiff Lashbrook thereafter attempted to transfer himself onto the bed, even using his prosthetic leg as a tool to pivot and push himself onto the bed, but was unable to transfer into the bed.  Plaintiff Lashbrook was again forced to sleep in his wheelchair, this time on his wedding night.

27.    Not being able to shower and having to sleep in his wheelchair not only subjected Plaintiff Lashbrook to discomfort, poor sleep, and back pain, but it also deprived him of the comforts,

amenities, and hotel experiences for which he had paid and which Extended Stay America employees repeatedly insisted he would be provided. For Plaintiffs, staying at a hotel is a way for them to be together in a private space, to cook dinner together, to shower, to sleep in the same bed, and to have a night out together. Despite representing that they would provide Plaintiffs with that experience, Defendants failed to provide them full and equal access to their services, facilities, privileges, advantages, or accommodations. Plaintiffs' experiences, like those of the proposed class, represent unlawful discrimination on the basis of disability.

28. Plaintiff Soli assisted and accompanied Plaintiff Lashbrook during all of his stays at Extended Stay America hotels. Plaintiff Soli seeks relief based on her association with her husband, Plaintiff Lashbrook. She has suffered discrimination and injury within the meaning of the ADA, California Unruh Civil Rights Act, California Disabled Persons Act, and California Unfair Competition Law that is specific, direct, and separate from the discrimination and injury suffered by Plaintiff Lashbrook. Plaintiff Soli experienced humiliation, embarrassment, frustration, disappointment, and mental and physical exhaustion as a result of assisting Plaintiff Lashbrook as he attempted to transfer on to and off of beds that were excessively high. Plaintiff Soli also experienced humiliation, embarrassment, frustration, disappointment, and mental and physical exhaustion as a result of having to bathe Plaintiff Lashbrook in his wheelchair due to his inability to access Defendants' shower facilities. Accordingly, Plaintiff Soli was denied full and equal access to Defendants' services, facilities, privileges, advantages, or accommodations as a result of her association with a person with a mobility disability.

## CLASS ALLEGATIONS

29. Plaintiffs Lashbrook and Soli bring this action on behalf of themselves and all persons similarly situated and seek class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3) as set forth below.

30. Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiff Lashbrook brings this action on his own behalf and on the behalf of the following injunctive relief class for violations of the Americans with Disabilities Act, California Unruh Civil Rights Act, and California Unfair Competition Law:

682921.19

1    All persons with mobility disabilities who use wheelchairs, scooters or other

2    mobility devices and will purchase or attempt to purchase, on their own or

3    through a third party on their behalf, accommodations in designated accessible

4    hotel rooms owned or operated by Defendants Extended Stay America, ESH

5    Hospitality, Inc. and ESA Management LLC in the United States.

6    31.    Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff Lashbrook

7    also brings this action on his own behalf and on behalf of the following California Subclass for

8    statutory damages under the California Unruh Civil Rights Act and the California Disabled Persons

9    Act:

10    All persons with mobility disabilities who use wheelchairs, scooters or other

11    mobility devices and have purchased, attempted to purchase, or for whom third

12    parties purchased accommodations in designated-accessible hotel rooms owned or

13    operated by Defendants Extended Stay America, ESH Hospitality, Inc. and ESA

14    Management LLC in California during the two years prior to the filing of this

15    Complaint through the conclusion of this action.

16    32.    Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff Soli brings

17    this action on her own behalf and on behalf of the following California Companion Subclass for

18    statutory damages under the California Unruh Civil Rights Act and the California Disabled Persons

19    Act:

20    All persons who are companions of persons with mobility disabilities who use

21    wheelchairs, scooters, or other mobility devices, and have accompanied such

22    persons during their stays in designated-accessible hotel rooms owned or operated

23    by Defendants Extended Stay America, ESH Hospitality, Inc. and ESA

24    Management LLC in California during the two years prior to the filing of this

25    Complaint through the conclusion of this action.

26    33.    Plaintiffs do not know the exact number of Class or Subclass members.  Members of the

27    Class and Subclasses are sufficiently numerous and geographically diverse, that joinder of all members

28    of the Class and Subclasses is impracticable.  Fed. R. Civ. Pro. 23(a)(1).

13
COMPLAINT

34.    All members of the Class and Subclasses have been and continue to be denied their civil rights to full and equal access to, and use and enjoyment of, the services and facilities owned and operated by the Defendants because of the violations of the disability nondiscrimination laws alleged herein.  Fed. R. Civ. Pro. 23(a)(2).  There are numerous questions of law and fact common to the Class and Subclasses, including, but not limited to, the following:

a.    Whether Defendants are the owners, operators, or lessors of places of public accommodations within the meaning of Title III of the ADA;

b.    Whether Defendants are business establishments within the meaning of the Unruh Civil Rights Act;

c.    Whether Defendants' hotels are public accommodations within the meaning of the Disabled Persons Act;

d.    Whether Defendants' policy and practice of failing and refusing to provide persons with mobility disabilities accessible hotel beds violates Title III of the ADA, the Unruh Act, and/or the Disabled Persons Act;

e.    Whether Defendants' policy and practice of failing and refusing to provide seats in the transfer-type showers in their designated accessible hotel rooms violates Title III of the ADA, the Unruh Act, and/or the Disabled Persons Act;

f.    Whether Defendants violated the ADA, Unruh Act, and/or Disabled Persons Act by constructing or altering facilities without ensuring they were accessible to and usable by individuals with disabilities, including by failing to adhere to federal disability accessibility standards as required;

g.    Whether Defendants failed and refused to remove barriers, where readily achievable, to provide full and equal enjoyment of their goods, accommodations, advantages, facilities, privileges, and/or services to persons with mobility disabilities in violation of Title III of the ADA, the Unruh Act, and/or the Disabled Persons Act;

h.    Whether Defendants failed and refused to make reasonable modifications to their policies, practices, and/or procedures as necessary to afford full and equal

enjoyment of their goods, accommodations, advantages, facilities, privileges, and/or services to persons with mobility disabilities in violation of Title III of the ADA, the Unruh Act, and/or the Disabled Persons Act;

i.     Whether Defendants identified and described accessible features in their hotel rooms offered through their reservation service in enough detail to reasonably permit individuals with mobility disabilities to assess independently whether a given hotel room meets his or her accessibility needs pursuant to 28 C.F.R. § 36.302(e)(1)(ii).

j.     Whether Defendants, by their actions and omissions alleged herein, have engaged in a pattern and practice of discriminating against Plaintiff and other persons with mobility disabilities in violation of applicable state and federal disability civil rights laws;

k.     Whether Defendants' failure to comply with Title III of the ADA and its implementing regulations constitute violations of the Unruh Act and the DPA for the California Subclasses;

l.     Whether Defendants' violations of the ADA, Unruh Act and/or DPA constitute unlawful business acts or practices under the UCL (Cal. Bus. & Prof. Code § 17200, *et seq*.) for the California Subclasses;

m.     Whether Defendants' conduct constitutes an unfair business act or practice under the UCL (Cal. Bus. & Prof. Code § 17200, *et seq*.) for the California Subclasses;

n.     Whether Defendants' conduct constitutes a fraudulent business act or practice under the UCL (Cal. Bus. & Prof. Code § 17200, *et seq*.) for the California Subclasses;

o.     Whether Defendants' violations of the ADA, Unruh Act and DPA entitle Plaintiffs and the members of the California Subclasses to minimum statutory damages; and,

1       p.      Whether the Plaintiffs and the members of the putative Class are entitled to

2               declaratory and/or injunctive relief, and the nature of such relief.

3       35.     These common questions and others predominate over questions, if any, that affect only

4   individual members of the Class and Subclasses.  Fed. R. Civ. Pro. 23(b)(3).

5       36.     Defendants have acted or refused to act on grounds that apply generally to the Class and

6   Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate with respect

7   to the Class and Subclasses as a whole.  Fed. R. Civ. Pro. 23(b)(2).

8       37.     Plaintiffs' claims are typical of the claims of the other Class and Subclass members

9   because Plaintiffs, by advancing their claims, will also advance the claims of all members of the Class

10  and Subclasses, and because Extended Stay America participates in activity that caused, and continues

11  to cause, members of the Class and Subclasses to suffer similar injury.  Fed .R. Civ. Pro. 23(a)(3).

12      38.     Plaintiffs and their counsel will fairly and adequately protect the interests of absent

13  Class and Subclass members.  There are no material conflicts between Plaintiffs' claims and those of

14  absent Class and Subclass members that would make class certification inappropriate.  Counsel for

15  Plaintiffs are experienced in complex class action litigation, including civil rights litigation on behalf

16  of individuals with disabilities, and will vigorously assert Plaintiffs' claims and those of the members

17  of the Class and Subclasses.  Fed. R. Civ. Pro. 23(a)(4).

18      39.     Whatever difficulties may exist in the management of the class action will be greatly

19  outweighed by the benefits of the class action procedure, including but not limited to, providing Class

20  and Subclass members with a method for the redress of claims that would otherwise be duplicative and

21  inefficient if pursued through individual litigation.  A class action is therefore superior to other

22  available methods for fairly and efficiently adjudicating this controversy.  Fed. R. Civ. Pro. 23(b)(3).

23                                  **FIRST CAUSE OF ACTION**
                **Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101,** *et seq.*
24                      **(on behalf of Plaintiffs and the Proposed Class)**

25      40.     Plaintiffs incorporate by reference herein the allegations in paragraphs 39, inclusive.

26      41.     In 1990 the United States Congress made findings that laws were needed to more fully

27  protect "some 43,000,000 Americans [with] one or more physical or mental disabilities"; that

28  "historically, society has tended to isolate and segregate individuals with disabilities"; that "such forms

---

16

COMPLAINT

of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous …." 42 U.S.C. § 12101.

42.     Title III of the Americans with Disabilities Act of 1990 ("ADA") provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.

43.     Defendants are among the "private entities" which are considered "public accommodations" for purposes of Title III of the ADA, which includes but is not limited to "… an inn, hotel, motel, or other place of lodging." *See* 42 U.S.C. § 12181(7)(A). The hotels owned and operated by Defendants are places of public accommodation within the meaning of Section 302(a) of the ADA, 42 U.S.C. § 12182(a).

44.     Plaintiff Lashbrook is substantially limited in the major life activities of walking and ambulating, and is an individual with a disability within the meaning of Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

45.     Plaintiff Soli is a person who has suffered specific, direct, and separate injury as a result of association with Plaintiff Lashbrook, who is a person with a disability within the meaning of Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

46.     Defendants' acts and omissions alleged herein violate Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, and the regulations promulgated thereunder, 28 C.F.R. Part 36, *et seq.* On information and belief, as of the dates of Plaintiffs' encounters with Defendants' hotels, as of the filing of this Complaint, and on a continuing basis, Defendants have denied and continue to deny Plaintiffs and the proposed class of mobility disabled persons and their companions, full and equal access to and full and equal enjoyment of Defendants' goods, services, facilities,

privileges, advantages and accommodations of Defendants' places of lodging, in violation of Title III of the ADA, 42 U.S.C. §§ 12182 and 12183. Defendants have failed to provide and maintain hotel rooms, including hotel beds and hotel showers, that are accessible to individuals with mobility disabilities, including Plaintiff Lashbrook, and have failed to provide persons with mobility disabilities the opportunity to use and enjoy on an equal basis Defendants' goods, services, facilities, privileges, advantages, or accommodations.

47.    Plaintiffs allege that Defendants designed, constructed, and/or altered their designated-accessible hotel rooms in a manner that triggered Title III's access requirements, including the general requirement that newly constructed or altered facilities be accessible to and readily usable by individuals with disabilities, *see* 42 U.S.C. § 12183(a), as well as the specific requirements delineated in the Department of Justice's 1991 and 2010 ADA Standards for Accessible Design. *See* 1991 DOJ ADA Standards for Accessible Design ("1991 Standards"), *available at* https://www.ada.gov/1991standards/adastd94-archive.pdf; 2010 DOJ ADA Standards for Accessible Design ("2010 Standards"), *available at* https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf.

48.    The 1991 Standards require that in facilities designed, constructed, or altered between January 26, 1993 and March 14, 2012, "[a] seat shall be provided in shower stalls 36 in by 36 in (915 mm by 915 mm) and … [t]he seat shall be mounted 17 in to 19 in (430 mm to 485 mm) from the bathroom floor and shall extend the full depth of the stall." 1991 Standards § 4.21.3. Facilities constructed or altered since March 15, 2012 must abide by the 2010 Standards, which state: "A folding or non-folding seat shall be provided in transfer type shower compartments." 2010 Standards § 608.4. "In transfer-type showers, the seat shall extend from the back wall to a point within 3 inches (75 mm) of the compartment entry. The top of the seat shall be 17 inches (430 mm) minimum and 19 inches (485 mm) maximum above the bathroom finish floor." *Id.* § 610.3.

49.    Plaintiffs are informed and believe that Defendants designed or constructed (or both) new facilities after January 26, 1993. The ADA prohibits designing and constructing facilities for first occupancy after January 26, 1993 that are not readily accessible to, and usable by, individuals with disabilities when it is structurally practicable to so. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.401.

Here, Defendants violated the ADA by designing and constructing (or both) designated accessible hotel rooms, beds, and shower facilities that were not readily accessible to, and usable by, individuals with disabilities and that did not comply with the applicable federal disability access design standards even though it was structurally practicable to do so.

50.     Plaintiffs further allege that, since January 26, 1993, Defendants have altered their facilities in a manner that affects or could affect the usability of their facilities or parts thereof, which triggers Title III's requirement that the altered portions of the facility be readily accessible to and usable by individuals with disabilities to the maximum extent feasible. *See* 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402. Here, Plaintiffs are informed and believe that Defendants have altered their facilities without making them readily accessible to and usable by individuals with disabilities to the maximum extent feasible, including by complying with the applicable federal disability access design standards which require that seats be provided in transfer-type shower facilities. On information and belief, Defendants continue to violate the ADA's new construction and alteration mandates.

51.     Since March 15, 2012, the ADA has required that a public accommodation that owns or operates a place of lodging "[i]dentify and describe accessible features in hotels and guest rooms offered through its reservation service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs" in "reservations made by any means, including by telephone, in-person, or through a third party." 28 C.F.R. § 36.302(e)(1)(ii). Defendants' reservation service failed to describe its designated-accessible hotel rooms, including the beds and shower facilities, in enough detail to permit Plaintiff Lashbrook to assess whether the rooms met his accessibility needs. On information and belief, Defendants' reservation service is and has been similarly deficient for the proposed class and constitutes an ongoing violation of the ADA.

52.     Under Title III of the ADA, public accommodations discriminate on the basis of disability where they fail to remove barriers to access where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304. If the entity can demonstrate removal is not readily achievable, the ADA requires that the public accommodation make its goods, services, facilities, privileges, advantages, or accommodations available through alternative methods where such methods

1    are readily achievable.  *Id.* § 12182(b)(2)(A)(v); 28 C.F.R. § 36.305.  Here, Defendants violated the

2    ADA by failing to remove barriers to access in their designated-accessible hotel rooms, including to

3    the beds and shower facilities, where removal was readily achievable, or, to the extent removal was not

4    readily achievable, by failing to make the designated-accessible rooms, including the beds and shower

5    facilities, available through alternative methods where such methods were readily achievable.  On

6    information and belief, Defendants continue to violate the ADA's barrier removal mandate.

7        53.    Finally, a public accommodation violates the ADA where it fails to reasonably modify

8    its policies, practices, or procedures when necessary to afford its goods, services, facilities, or

9    accommodations to individuals with disabilities, unless the entity can demonstrate that making such

10   modifications would fundamentally alter their nature.  42 U.S.C. § 12182(b)(2)(A)(ii).  Here,

11   Defendants failed and continue to fail to make reasonable modifications in policies, practices, or

12   procedures regarding bed heights, provision of shower chairs, and reservation services at their

13   Extended Stay America hotels, when those modifications were and are necessary to afford (and would

14   not fundamentally alter the nature of) their goods, services, facilities, and accommodations to persons

15   with mobility disabilities.

16       54.    Pursuant to the ADA, 42 U.S.C. 12188 *et seq.*, Plaintiffs and the proposed Class are

17   entitled to the remedies and procedures set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C.

18   2000(a)-3(a), as they have been subjected to discrimination based on disability in violation of Title III

19   of the ADA, are being subjected to discrimination based on disability in violation of Title III of the

20   ADA, and have reasonable grounds for believing that they will be subjected to such discrimination

21   each time that they attempt to access Defendants' hotel facilities.  Pursuant to § 12188(a)(2), Plaintiffs

22   and the proposed Class are entitled to injunctive relief, as follows:  "Injunctive relief.  In the case of

23   violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall

24   include an order to alter facilities to make such facilities readily accessible to and usable by individuals

25   with disabilities to the extent required by this subchapter.  Where appropriate, injunctive relief shall

26   also include requiring the provision of an auxiliary aid or service, modification of a policy, or

27   provision of alternative methods, to the extent required by this subchapter."  On behalf of themselves

28   and the proposed Class, Plaintiffs seek relief pursuant to remedies and procedures set forth in § 204(a)

1   of the Civil Rights Act of 1964, 42 U.S.C. § 2000(a)-3(a), 42 U.S.C. § 12188(a) & § 12205 (attorneys'

2   fees, expenses and costs), and pursuant to Federal Regulations adopted to implement the ADA.

3       55.     Pursuant to Federal Rule of Civil Procedure 57, Plaintiffs and the proposed Subclasses

4   seek declaratory relief, including but not limited to a declaration that failure to provide accessible hotel

5   beds and shower facilities in Defendants' designated-accessible hotel rooms, and failure to provide a

6   registration service that reasonably permits individuals with disabilities to assess independently

7   whether a given hotel room meets his or her accessibility needs, violate the rights of Plaintiffs and the

8   proposed Subclasses under Title III of the ADA (42 U.S.C. § 12101) and the regulations promulgated

9   thereunder.

10      WHEREFORE, Plaintiffs request additional relief as outlined below.

11                              **<u>SECOND CAUSE OF ACTION</u>**
        **Violation of California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.***
12          **(on behalf of Plaintiffs and the Proposed California Subclasses)**

13      56.     Plaintiffs incorporate by reference herein the allegations in paragraphs 55, inclusive.

14      57.     The Unruh Civil Rights Act, California Civil Code § 51(b), provides that:  "All persons

15  within the jurisdiction of this state are free and equal, and no matter what their sex, race, color,

16  religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal

17  accommodations, advantages, facilities, privileges, or services in all business establishments of every

18  kind whatsoever."

19      58.     The Unruh Civil Rights Act, California Civil Code § 51(f) also provides that: "A

20  violation of the right of any individual under the federal Americans with Disabilities Act of 1990

21  (Public Law 101-336) shall also constitute a violation of this section."

22      59.     Plaintiff Lashbrook and all members of the proposed California Subclass are persons

23  with a disability within the meaning of California Civil Code §§ 51, *et seq.*

24      60.     Plaintiff Soli and all members of the proposed California Companion Subclass are

25  persons who have suffered specific, direct, and separate injury as a result of association with persons

26  with disabilities within the meaning of California Civil Code §§ 51, *et seq.*

27

28

682921.19

61.     Defendants are business establishments within the meaning of California Civil Code §§ 51, *et seq.* Defendants are the owners and operators of business establishments.

62.     Defendants violated the Unruh Act by their acts and omissions, as follows:

a.     Failing to construct, alter, provide and maintain designated accessible hotel rooms, including hotel beds and shower facilities, that are accessible to and independently usable by people with mobility disabilities, including Plaintiff Lashbrook and the members of the proposed Subclass;

b.     Failing to provide persons with mobility disabilities, including Plaintiff Lashbrook and the members of the proposed Subclass, full and equal access to the accommodations, advantages, facilities, privileges, and/or services of Defendants, including their hotel rooms and reservation service;

c.     Failing to make reasonable modifications in policies and procedures as necessary to ensure Plaintiff and members of the proposed Subclass have full and equal access to their accommodations, advantages, facilities, privileges, or services at their hotels;

d.     Failing to remove barriers to full and equal access to the services, facilities, advantages, and accommodations provided by Defendants;

e.     Violating the ADA, which is also a violation of the Unruh Act.  Cal. Civil Code § 51(f);

f.     Causing specific, direct, and separate injury to companions of persons with mobility disabilities who were denied full and equal access to the accommodations, advantages, facilities, privileges, and/or services of Defendants, including their hotel rooms and reservation service.

63.     Defendants have violated and are violating the Unruh Act intentionally and/or with deliberate indifference to the likelihood that they are violating the rights of individuals with mobility disabilities.  Alternatively, Defendants' violations are and were so intuitive or obvious that noncompliance could not be other than intentional.

682921.19

64.     Because the Defendants' actions and failures were and are a continuing and ongoing violation of California Civil Code §§ 51, *et seq.*, Plaintiff Lashbrook and the proposed Class are entitled to injunctive relief remedying the discrimination by ordering Defendants to provide accessible beds and shower facilities in designated-accessible rooms at all of Defendants' hotels in the State of California that Plaintiff Lashbrook and the proposed Class have patronized or would patronize if accessible beds and shower facilities were provided, and ordering Defendants to provide a registration service that reasonably permits individuals with mobility disabilities to assess independently whether a given hotel room meets his or her accessibility needs.

65.     Plaintiff Lashbrook, Plaintiff Soli, the proposed California Subclass, and the proposed California Companion Subclass are also entitled to statutory damages pursuant to California Civil Code § 52.

66.     Pursuant to Federal Rule of Civil Procedure 57, Plaintiffs and the proposed Subclasses seek declaratory relief, including but not limited to a declaration that failure to provide accessible hotel beds and shower facilities in Defendants' designated-accessible hotel rooms, and failure to provide a registration service that reasonably permits individuals with disabilities to assess independently whether a given hotel room meets his or her accessibility needs, violate the rights of Plaintiffs and the proposed Subclasses under California Civil Code § 51.

WHEREFORE, Plaintiffs request relief as set forth below.

### THIRD CAUSE OF ACTION
**Violation of California's Disabled Persons Act, Cal. Civ. Code §§ 54, *et seq.***
**(on behalf of Plaintiffs and the Proposed California Subclasses)**

67.     Plaintiffs incorporate by reference herein the allegations in paragraphs 66, inclusive.

68.     The California Disabled Persons Act requires that individuals with disabilities have "full and equal access, as other members of the general public, to accommodations, advantages, facilities, … hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons."  Cal. Civ. Code § 54.1(a)(1).

69.     The California Disabled Persons Act also provides that: "A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a

682921.19

violation of this section, and this section does not limit the access of any person in violation of that act."

70.    Extended Stay America hotels are places of public accommodation within the meaning of California Civil Code §§ 54.1 and 54.3.

71.    Plaintiff Lashbrook and the members of the proposed California Subclass are individuals with a disability within the meaning of California Civil Code § 54 & 54.1, *et seq.*

72.    Plaintiff Soli and all members of the proposed California Companion Subclass are persons who have suffered specific, direct, and separate injury as a result of association with persons with disabilities within the meaning of California Civil Code §§ 54 & 54.1, *et seq.*

73.    Extended Stay America is violating the rights of individuals with mobility disabilities, including Plaintiffs and the members of the proposed Subclasses, to full and equal access to public places, and to the services, advantages, and facilities of those public places by failing to provide and maintain designated-accessible hotel rooms (due to inaccessible hotel beds and shower facilities) and failing to provide a registration service that reasonably permits individuals with disabilities to assess independently whether a given hotel room meets his or her accessibility needs, as alleged above.

74.    Defendants have violated and continue to violate California Civil Code § 54 in that the conduct alleged herein violates the ADA, 42 U.S.C. §§ 12181, *et seq.*, which is also a violation of California Civil Code § 54.  Cal. Civ. Code § 54.1(d).

75.    Defendants' actions constitute a continuous and ongoing violation of the rights of Plaintiff and the proposed Subclass under California Civil Code §§ 54, *et seq.*  Plaintiff and the proposed subclass are thus entitled to statutory damages, declaratory relief, and reasonable attorneys' fees and costs under California Civil Code § 54.3.

76.    Pursuant to Federal Rule of Civil Procedure 57, Plaintiffs and the proposed Subclasses seek declaratory relief, including but not limited to a declaration that failure to provide accessible hotel beds and shower facilities in Defendants' designated-accessible hotel rooms, and failure to provide a registration service that reasonably permits individuals with disabilities to assess independently whether a given hotel room meets his or her accessibility needs, violate the rights of Plaintiffs and the proposed Subclasses under California Civil Code § 54.

WHEREFORE, Plaintiffs request relief as set forth below.

## FOURTH CAUSE OF ACTION
**Violation of the California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.***
**(on behalf of Plaintiffs and the Proposed California Subclasses)**

77.     Plaintiffs incorporate by reference herein the allegations in paragraphs 76, inclusive.

78.     California Business and Professions Code §§ 17200, *et seq.*, prohibits businesses from engaging in unlawful, unfair, or fraudulent business practices.  Defendants' discriminatory policies and practices, as alleged above, with regard to providing hotel services, facilities, advantages, and accommodations that are inaccessible to Plaintiffs and the proposed Subclasses constitute "business acts and practices" that are unlawful, unfair, and fraudulent.

79.     Defendants' violations of the ADA, Unruh Act, and DPA, as alleged above, constitute unlawful business acts and practices in violation of California Business and Professions Code § 17200.

80.     Defendants' conduct offends established public policy, is substantially injurious to consumers, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably avoid. Thus, it constitutes an unfair business act and practice in violation of California Business and Professions Code § 17200.

81.     Defendants' general and specific representations to the public and Plaintiffs regarding the accessibility of their designated-accessible hotel rooms are deceptive and therefore constitute a fraudulent business act and practice in violation of California Business and Professions Code § 17200.

82.     Plaintiffs and members of the proposed Subclasses have suffered injury in fact and lost money or property pursuant to California Business and Professions Code § 17204 as a result of these unlawful and/or unfair business acts and practices.  Plaintiffs and members of the proposed Subclasses requested and paid for designated-accessible hotel rooms that would include accessible beds and shower facilities.  They did not receive the value of the rooms they purchased because their rooms were furnished with beds and shower facilities they could not fully and independently use due to Defendants' failure to ensure that these facilities provided full, equal, and independent access to people with mobility disabilities.  Plaintiffs would not have stayed with Extended Stay America had they known Plaintiff Lashbrook could not shower or sleep in the beds, but they relied on Defendants' representations that the rooms would be accessible to Plaintiff Lashbrook.  On the three occasions

682921.19

Plaintiffs visited Defendants' hotels, they only once received a refund. Unless Defendants' ongoing discriminatory conduct is enjoined, Plaintiffs and members of the Subclasses will continue to be injured in the future.

83.    Plaintiff and the members of the proposed Subclasses are entitled to an injunction ordering Defendants to cease and desist their discriminatory, and therefore unlawful, unfair, and fraudulent practices, and to restore the money that Plaintiffs and the proposed Subclasses lost as a result of Defendants' discriminatory, and therefore unlawful or unfair, business acts and practices alleged herein. Cal. Bus. & Prof. Code § 17203.

84.    Pursuant to Federal Rule of Civil Procedure 57, Plaintiffs and the proposed Subclasses seek declaratory relief, including but not limited to a declaration that failure to provide accessible hotel beds and shower facilities in Defendants' designated-accessible hotel rooms, and failure to provide a registration service that reasonably permits individuals with disabilities to assess independently whether a given hotel room meets his or her accessibility needs, violate the rights of Plaintiffs and the proposed Subclasses under California Business and Professions Code § 17200.

WHEREFORE, Plaintiffs request relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief against Defendants:

A.    That this matter be certified as a class action with the Class and California Subclasses defined as set forth above, that Plaintiffs be appointed Class Representatives, and that their attorneys be appointed Class Counsel;

B.    That Defendants be enjoined from violating Americans with Disabilities Act §§ 12101, *et seq.*, California Civil Code §§ 51, *et seq.*, and California Business and Professions Code §§ 17200, *et seq.*, and be ordered as part of such injunction, to remediate all barriers to access in designated accessible rooms at every Extended Stay America hotel owned and operated by Defendants, including the provision of accessible hotel beds and shower facilities therein, and to provide a registration service that reasonably permits individuals with mobility disabilities to assess independently whether a given hotel room meets his or her accessibility needs;

C.      For a declaratory judgment that Defendants' actions, omissions, and failures, including without limitation, Defendants' failure to provide accessible hotel beds and shower facilities in Defendants' designated-accessible rooms, and failure to provide a registration service that reasonably permits individuals with mobility disabilities to assess independently whether a given hotel room meets his or her accessibility needs, violate the rights of Plaintiff and other similarly situated persons under 42 U.S.C. §§ 12101 *et seq*. and the regulations promulgated thereunder; California Civil Code §§ 51 *et seq*.; California Civil Code §§ 54 *et seq*.; and California Business and Professions Code §§ 17200, *et seq.*;

D.      For an award of all appropriate damages to the named Plaintiffs in an amount to be determined by proof, including without limitation compensatory damages and statutory damages pursuant to California Civil Code §§ 52(a) and 54.3;

E.      For an award of statutory damages to the members of the California Subclasses in accordance with California Civil Code §§ 52(a) and 54.3;

F.      For an award of restitution pursuant to California Business and Professions Code §§ 17200, *et seq*. on behalf of Plaintiffs and members of the California Subclasses pursuant to California Business and Professions Code §17203;

G.      For Plaintiffs' reasonable attorneys' fees, expenses, costs, and interest thereon pursuant to 42 U.S.C. § 12205, California Civil Code §§ 52(a) and 54.3(a), and California Code of Civil Procedure § 1021.5; and

H.      For such other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims for which a jury is permitted.

Dated:  December 22, 2017                    Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Andrew P. Lee*
_____
Linda M. Dardarian
Andrew P. Lee
Katharine Fisher

682921.19